# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA REYES, *as the heir and representative of the estate of RICARDO REYES*,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:25-cv-00452-SAB<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 17, 26) |

Plaintiff Christina Reyes, as heir and representative of the Estate of Ricardo Reyes, ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the final decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to adjudicate Plaintiff's claim through the date last insured and by failing to resolve an apparent conflict between the vocational expert's testimony and Dictionary of

Occupational Titles.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

## I.

## BACKGROUND

### A. Agency Procedural History

On May 1, 2001, Plaintiff[1] protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 1, 2000. (ECF No. 14, Administrative Record ("AR"), 100.) Plaintiff's application was initially denied on May 1, 2002, and denied upon reconsideration on December 24, 2002. (Id.) On June 8, 2008, Plaintiff filed a new Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 2, 2000, a date which was one day after the prior alleged onset date. (Id.) That claim was denied initially on August 15, 2008, and upon reconsideration on December 26, 2008, as *res judicata*. (Id.) Plaintiff requested a hearing before an ALJ. (Id.) On February 12, 2013, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Thomas C. Dachelet testified. (Id.) On March 22, 2013, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 109.) On December 23, 2014, the Appeals Council denied Plaintiff's request for review. (AR 187.)

Thereafter, on February 18, 2015, Plaintiff filed a complaint seeking judicial review of the final decision by the Commissioner in the Eastern District of California. Reyes v. Commissioner, No. 1:15-cv-00258-BAM, ECF No. 1, Complaint (Feb. 18, 2015). On December 21, 2015, the Hon. Barbara A. McAuliffe signed a stipulation remanding this action back to the Commissioner for a new hearing and decision. Id. at ECF No. 18. Specifically, the parties stipulated that:

> The Appeals Council will instruct the ALJ to reevaluate the medical evidence concerning physical and mental impairments, and explain the weight given to the opinion evidence consistent with 20 C.F.R. §§ 404.1527 and 416.927, and Social Security Rulings (SSR) 96-2p and 96-5p. The Appeals Council will also instruct the ALJ to further evaluate whether Plaintiff has the residual functional capacity to perform his past relevant work and,

[1] For convenience and clarity, though Plaintiff is an estate representing a decedent, the Court, when referring to Ricardo Reyes, will simply rely on the term "Plaintiff."

> if appropriate, obtain supplemental vocational expert testimony to assist in determining what jobs exist, if any, for Plaintiff given his age, education, vocational factors and residual functional capacity. The ALJ will take any further action the ALJ deems necessary to develop the record and issue a new decision.

Id.

On remand, on December 14, 2017, Plaintiff again appeared, represented by counsel, for a hearing in front of an ALJ. (AR 31.) Plaintiff and VE Cheryl R. Chandler testified. (Id.) On November 6, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 1, 41.) On February 19, 2025, the Appeals Council denied Plaintiff's request for review. (AR 6.)

**B. The ALJ's Findings of Fact and Conclusions of Law**

In the decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2001, and he had not engaged in substantial gainful activity during the period from his alleged onset date of June 2, 2000, through his date last insured of March 31, 2001. (AR. 34.) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the left shoulder; depression; and anxiety. (Id.) However, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently, as well as stand, sit, and walk up to 6 hours in an 8-hour workday. Plaintiff was precluded from performing work at or above shoulder level with his left upper extremity, and Plaintiff was capable of performing jobs which are unskilled in nature. (AR 35.)

Through the date last insured, Plaintiff was unable to perform any past relevant work. (AR 39.) The ALJ then found Plaintiff was 50 years old, and he had at least a high school education. (AR 40.) The ALJ discussed that transferability of job skills was not an issue because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff has transferable job skills. (Id.) Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were

jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from June 2, 2000, the alleged onset date, through March 31, 2001, the date last insured. (AR 41.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 8, 9.) Thereafter, the parties filed their briefs on the matter.[2] (ECF Nos. 17, 26, 27.)

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the

[2] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[4] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to adjudicate the claim through the date last insured. (ECF No. 17, pp. 6-7.) Second, Plaintiff contends that the ALJ erred by failing to identify and resolve an apparent conflict between the VE's testimony and the DOT's Selected Characteristics of Occupations ("SCO").[5] (Id. at pp. 7-10.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 26.) The Court agrees with the Commissioner.

### A. Insured Status Requirements of the Social Security Act

A claimant who seeks disability insurance benefits under Title II must have disability insured status in the month in which he became disabled. See 20 C.F.R. § 404.131(b). Certain earnings as a government employee do not count toward disability insured status, but "may constitute Medicare qualified government employment," or MQGE, which is covered under Title XVIII. 20 C.F.R. § 404.1018b(a). MQGE does not qualify the individual for disability insurance benefits. Compare 20 C.F.R. § 404.131 with 20 C.F.R. § 404.1018b.

In this case, Plaintiff filed a Title II application, which, as relevant here, covers a period of disability and disability insurance benefits. (AR 100, 143); see 42 U.S.C. § 401 *et seq.* Again,

[5] The Court grants Plaintiff's request for judicial notice of the U.S. Department of Labor's Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles. (ECF No. 20.)

Medicare coverage is covered by Title XVIII. 42 U.S.C. § 1395 *et seq*. In support that Plaintiff "applied for Medicare," Plaintiff has directed the Court to AR 76, which is a page from the transcript of the December 14, 2017 hearing in front of the ALJ. That page included testimony regarding Plaintiff's high school education and veteran status. (AR 76.) In an abundance of caution, the Court has reviewed the hearing in its entirety and there was at no time discussion on the issue of Medicare coverage. Therefore, the Court is not persuaded by Plaintiff's argument that the ALJ miscalculated the date of last insured based on MQGE.

In light of the foregoing, the Court agrees with the Commissioner that even if there were an error regarding MQGE, it would not have had an impact on Plaintiff's claim for disability insurance benefits under Title II. In reply, Plaintiff does not even contend with this issue; instead, Plaintiff addresses only the Commissioner's alternative argument that any error regarding the date of last insured was nonetheless harmless.

Thus, the Court finds that Plaintiff has failed to demonstrate that the ALJ's determination regarding the date last insured was not supported by substantial evidence. Therefore, the ALJ did not err.

**B. Conflict Between the VE and the DOT**

Plaintiff argues that the ALJ's physical limitation of Plaintiff's ability to reach at or above shoulder level with his non-dominate hand was in conflict with the DOT's SCO regarding the jobs Plaintiff could have performed that the ALJ accepted from the VE. The Commissioner directs the Court to the hearing testimony and precedent in support of his position that the ALJ did not err. The Court agrees with the Commissioner.

As relevant here, "[a]n applicant is entitled to disability benefits unless the ALJ finds that the person is capable of making the adjustment to other work." Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016). The DOT "is not the sole source of admissible information concerning jobs." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (internal quotation omitted). "The Secretary may take administrative notice of any reliable job information, including . . . the services of a vocational expert." Id. (internal quotation omitted); see Biestek v. Berryhill, 587 U.S. 97, 100 (2019), citing 20 C.F.R. §§ 404.1566(e), 416.966(e); SSA, Hearings, Appeals, and Litigation Law

Manual I-2-5-50 (Aug. 29, 2014). Though, the DOT still "guides the analysis." Gutierrez, 844 F.3d at 807. If the VE's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the DOT, "then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." Id., citing SSR 00-4P, 2000 WL 1898704, at *2 (2000).

The Ninth Circuit has explained that for a difference between an VE's testimony and the DOT's listing "to be fairly characterized as a conflict, it must be obvious or apparent." Id. at 808. "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." Id. This is so because "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." Id.

At the hearing the ALJ and the VE engaged in the following dialogue regarding hypotheticals for possible jobs:

> ALJ: I ask you to consider an individual capable of lifting and carrying 15 – 50 pounds occasionally, 25 pounds on a frequent basis. The individual be able to stand and or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday, and the individual precluded from performing work at or above the shoulder level. Could that individual perform the past work of our claimant?
>
> VE: No.
>
> ALJ: Would there be other jobs in the national economy that an individual could perform? And if so, can you give an example of up to three of those if they do exist?
>
> VE: Yes, Your Honor. So, you need some examples with the preclusion citing the shoulder.
>
> ALJ: Okay. So, that's no overhead, nothing at shoulder level.
>
> VE: Got it, no at or above, okay. Change Person, 211.467-034, medium, SVP: 2. Approximately 9,000 jobs in the national economy full-time. I've got a Welder, unskilled, medium, 810.664-010, SVP: 2. Approximately 100 – let me do the math here – approximately 115,000 full-time nationally. And Hand Packager, 920.587-018, medium, SVP: 2. Approximately 32,000 full-time nationally.
>
> ALJ: Okay. Our second hypothetical now, if we had that hypothetical individual, but this person was now at the light range

of the – of work, would there be jobs in the national economy for that individual?

VE: Yes, Your Honor. Looking at unskilled light with the shoulder limitations again.

ALJ: Yes, the same shoulder limitations.

VE: Okay. Well, Usher 344.677-014, light, SVP: 2. Approximately 10,000 full-time nationally. Ticket Taker, 344.677-010, light, SVP: 2. Approximately 12,000 nationally full-time. We've got Storage Facility Rental Clerk, 295.367-026, light, SVP: 2. Approximately 130,000 full-time.

ALJ: Our third hypothetical, let's just assume that – all right, I mean, if we were at the sedentary level for that same individual, would there be any transferable skills from past work that would transfer to anything that would be performed by somebody I've given RFC?

VE: At sedentary?

ALJ: Yes, ma'am.

VE: No.

* * *

ALJ: What I would like you to include, if we've – we heard the testimony here as well, go back to Hypothetical 1, I guess, and 2. If we add a qualifier to those – now with the left upper extremity, if there's a limitation because of the strength on handling and fingering to an occasional level, would there be work in Hypothetical 1 if I had that particular limitation? Would that rule out the jobs that you'd given to me?

VE: Yes, it would.

ALJ: Would there be any work for that individual?

VE: If just affecting the left?

ALJ: Yes, ma'am.

VE: Okay.

ALJ: The handling and fingering part, yes, ma'am.

VE: Occasionally. I think the unskilled work – it does close for both because –

ALJ: At medium?

VE: – I'm pretty – yes, that medium limit. And I think at light, too, because Your Honor, you've got to use both hands when

> you're at unskilled work typically.
>
> ALJ: Okay.
>
> VE: Greater than occasional.
>
> ALJ: Okay. Is your testimony consistent with the DOT, Ms. Chandler?
>
> VE: Yes, sir.

(AR 79-81.)

Plaintiff's attorney then engaged with the VE regarding the issue of reaching:

> Attorney: Ms. Chandler, in the DOT, do they differentiate between bilateral and – or one arm – two arms versus one arm?
>
> VE: No.
>
> Attorney: In reaching?
>
> VE: No, there's no distinction.
>
> Attorney: And what is the reaching requirements for a welder?
>
> VE: Let me look at the one – just looking at my McCroskey Quick Check. You asked about reaching, it does indicate for reaching, handling, fingering, feeling is all grouped in the frequent category. Sometimes McCroskey kind of glums things together. So, let me look at SkillTRAN because they detail it a bit more. Let me just double-check that as soon as it boots. Reaching and handling. Okay, give me the quick view. Reaching, handling, yeah, those are frequent, so that would have to be – well, it doesn't distinct between left and right. Those are all rated at frequent.
>
> Attorney: And is there – in the DOT, is there any classifications on reaching above head, at shoulder, or below shoulder?
>
> VE: It doesn't make a distinction, no.
>
> Attorney: And do they assume that – or do you know if they assume that all three of those categories would be applicable to the reaching limitations?
>
> VE: What I have as a, as a quick guide is reaching with hands/arms in any direction, is what we're talking about when we talk about reaching. So, there's no distinction overhead, how far in front of you, et cetera.
>
> Attorney: And with the Change Person and the Hand Packager, what are the reaching requirements?
>
> VE: Those are frequent. The reaching, handling is frequent. And the other one – I didn't write notes on this stuff, so Change Person,

> what was the other one?
>
> Attorney: Change Person and Hand Packager, 920.58 –
>
> VE: I don't, I don't need the number. Yeah, frequent. But again, doesn't distinguish overhead or not, or at shoulder height. Most reaching is done at chest to waist level. That's what we see in the actual world of analyzing jobs.
>
> Attorney: And in the Hypothetical 2, you gave three jobs, Usher, Ticket Taker, and Storage Facility Rental Clerk. Can you give us the reaching requirements for those jobs?
>
> VE: Reaching, handling, fingering is listed as occasional for Usher. Reaching, handling, frequent finger dexterity, occasional.
>
> Attorney: For what?
>
> VE: Finger is occasional.
>
> Attorney: No, no, what job?
>
> VE: Ticket Taker.
>
> Attorney: Thank you.
>
> VE: Last one, reaching, handling are frequent.

(AR 82-83.)

Thereafter, the ALJ addressed the issues raised by Plaintiff's attorney with the VE:

> ALJ: Okay. So, the responses that you gave, do you still feel that – with the given RFC in Hypothetical 1 that those medium jobs could be performed by the person I described in Hypothetical 1?
>
> VE: I believe so, Your Honor, because the distinction is reaching, as I've been asked to clarify, is what the frequency is, but it doesn't talk about the range.
>
> ALJ: And again, the range, and – what do you base the – your testimony? Is this experience? It's –
>
> VE: Yes, because there's no – as we talked about, there's no distinction per the DOT whether we're talking about just reaching at your waist level or at shoulder or above. Those are – and most jobs that do involve reaching aren't going to have – I'm thinking cashier or some jobs where you've got something to reach up for, like cigarettes are often store above like that. So, but there's reaching going on all the time, but how much of it is at shoulder and above? And that tends to be less, quite a bit less, most of the time.
>
> ALJ: So, the testimony – your testimony would be that the three medium jobs that you give, the Change Person, the Welder, and the

> Hand Packer, would not require work above shoulder level?
>
> VE: Without looking at every job in detail?
>
> ALJ: At or above – I mean, at or above.
>
> VE: At or above, I think my response would be rare.
>
> ALJ: Would be what, I'm sorry?
>
> VE: Rare.
>
> ALJ: Rare?
>
> VE: Rarely. That there could be times where in any of those occupations that might reach up at that level, rarely.
>
> ALJ: Okay.
>
> VE: Okay?
>
> ALJ: So, do you feel that that hypothetical person could perform those – I know that rarely that would be they could perform those jobs.
>
> VE: Well, let me just go back and clarify. The at or above limitation, was that bilateral?
>
> ALJ: Let's take the – use it for the left upper extremity, which is non-dominant.
>
> VE: So, most of the work is going to be done by the dominant arm. If you're going to go up to reach for an object, you typically would do that with your dominant arm. With – the non-dominant is the helper hand. As we get into lower skill level, if you're down low and you're doing the hand packaging situation, the hands are going to be down and both moving a great deal. But with the reaching, I think we're – we've met that.

(AR 84-85.)

Plaintiff argues that the ALJ's RFC conflicts with the jobs the ALJ accepted from the VE with regard to the first hypothetical. Plaintiff further argues that the ALJ should have followed up with more specific limitations in order to find jobs that did not include any reaching at or above shoulder level. The Court is not persuaded.

In response to a hypothetical that includes the limitations an ALJ found credible, a VE may testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.

1999). "A VE's recognized expertise provides the necessary foundation for his or her testimony." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Accordingly, VE's testimony is substantial evidence on which the ALJ may rely to determine whether a claimant can perform work that exists in significant numbers. See Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.").

Social Security Ruling 00-4p addresses the issue of conflicts in occupational information.

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4P, 2000 WL 1898704, at *2 (2000).

The Court finds that the ALJ complied with his duty under SSR 00-4P to resolve any apparent conflict between the DOT and the VE's testimony. To Plaintiff's inquiries of the VE about reaching, the ALJ asked the VE to explain why she had included jobs that had frequent reaching as a component for hypothetical 1 jobs. The VE explained that there are certain types of jobs that broadly include a frequent reaching component and that the DOT does not distinguish between reaching at or above shoulder level with below shoulder level. As to the jobs the VE testified Plaintiff could perform as to hypothetical 1, the VE further testified that, in her view, reaching at or above shoulder height would be "rare." Following this testimony, the ALJ specifically inquired whether Plaintiff could perform these jobs with a reaching limitation as to only his non-dominate left hand. The VE gave an explanation and ultimately testified that, "with the reaching, I think we're – we've met that." (AR 85.)

With that, the ALJ relied upon the VE's testimony regarding hypothetical 1 jobs. (AR 41.)

Furthermore, though the VE gave more insight into the nature of the jobs of change person, welder and hand packager (*i.e.*, reaching would be rare), the ALJ determined that this was not inconsistent with the information in the DOT. (Id.) The ALJ was within his rights to rely on the VE's nuanced testimony. Johnson, 60 F.3d at 1435; see Guith v. Berryhill, No. 1:16-cv-00625 GSA, 2017 WL 4038105, at *6 (E.D. Cal. Sept. 13, 2017) ("The VE gave affirmative testimony on cross-examination that an individual limited to occasional overhead activity would be able to perform these jobs. Given these facts, it was not obvious or apparent that a conflict existed between the VE's testimony and the DOT such that the ALJ would be required to elicit additional testimony from the VE."). Even assuming there was an apparent conflict, the ALJ discharged his duty by inquiring further of the VE and accepting her rationale. See, e.g., DICOT 920.587-018, Packager, Hand (indicating that working at or above shoulder level with the non-dominant hand was not an essential, integral, or expected part of the hand packager occupation). The Court has considered the parties' remaining arguments and has found them either to be not persuasive or unnecessary to reach in light of the foregoing.

Accordingly, on this issue the ALJ did not err.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Christina Reyes. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **August 19, 2026**

STANLEY A. BOONE
United States Magistrate Judge